# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 5:12-cr-043 |
| v. ) | |
| ) | By:   Michael F. Urbanski |
| MATTHEW LEE COMER ) | Chief United States District Judge |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Matthew Lee Comer's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 309. The government has responded in opposition. ECF No. 319. Both parties have filed supplemental responses. ECF Nos. 325, 326, 327, and 328. For the reasons stated herein, the court will **GRANT** Comer's motion for compassionate release and reduce his sentence to 1 month and 8 days.

### I.

Comer has long struggled with addiction, particularly with regard to methamphetamine. On December 10, 2013, Comer was convicted of conspiracy to possess with intent to distribute bath salts and sentenced to 72 months imprisonment with a 5-year term of supervised release. Comer's presentence investigation report ("PSR") reflected a 2003 Rockingham County, Virginia, felony conviction for methamphetamine and firearms offenses. PSR, ECF No. 315, at ¶ 32.  On June 16, 2015, Comer's federal sentence was reduced to 58 months pursuant to United States Sentencing Guidelines Amendment 782. ECF No. 277. Comer was released from federal custody in April 2016, but was arrested a few months later on December 8, 2016, for violation of the terms of his federal supervised release. A revocation

hearing was scheduled for January 2017 but was rescheduled when it was learned that a state arrest warrant was issued for Comer out of Augusta County, Virginia, for a new offense of possession with the intent to distribute methamphetamine.

Although Comer remained in primary federal custody, state court proceedings against Comer continued, complicating his eventual federal sentencing. On August 18, 2017, Comer pleaded guilty in Augusta County Circuit Court to illegal drug possession and was sentenced to 7 years' imprisonment, with 5 years and 6 months suspended. State court records indicate that the Augusta County arrest warrant was executed on Comer on January 17, 2017. In March 2107, Rockingham County initiated probation violation proceedings against Comer. On December 4, 2017, Comer was sentenced in Rockingham County to 5 years, to run consecutive to any other sentence. Because the state sentences were consecutive, Comer was required to serve 6.5 years in state prison.

Comer's federal supervised release violation and Rockingham County probation violation arose out of the same drug distribution conduct for which Comer was convicted in Augusta County. Thus, Comer's drug dealing in the fall of 2016 in Augusta County subjected him to three criminal judgments, one in Augusta County for the new methamphetamine distribution offense, one in Rockingham County for violation of his state probation, and one in federal court for violation of his federal supervised release.

After Comer's state proceedings were concluded, the federal district court held a supervised release revocation hearing on April 16, 2018. At the revocation hearing, the court inquired as to whether Comer was getting credit towards his state sentences for the time he had been serving. Sent. Hr'g. Tr., ECF No. 308, at 3. Probation advised that Comer "is getting

2

credit for the time he's serving for state sentences." Hr'g Tr., ECF No. 308, at 3. Based on this advice, the court imposed a 14-month sentence for violation of his supervised release, to run concurrently with the state time the court was advised he was currently serving.

As stated at the revocation hearing, because Comer was sentenced to 6.5 years in state court for the same conduct giving rise to the federal supervised release violation, the court found the state sentence to be sufficient to provide deterrence and account for the breach of the court's trust. The court stated:

> I understand why the United States and probation believe this should be run consecutively, but upon reflection, I've decided to run it concurrently with his state sentence. I do that because if it was just a year-and-a-half of active time he was getting out of August County, I would run it consecutively. But he's gotten the five years in comeback time for the same violation from state court in Rockingham County, so he's gotten the six-and-a-half years. So I do think the breach of the trust, whether this court or the Rockingham court, is being taken care of in this sentence.

Id. at 16.

In other words, at the time of sentencing, the court believed that the 6.5 years that Comer was required to serve in state prison was sufficient to meet the goals of punishment for Comer's federal supervised release violation. The court did not intend to sentence Comer to 14 months of federal incarceration on top of the 6.5 years Comer was to serve in state prison. For that reason, the court ordered Comer's federal sentence to run concurrent with his state sentences.[1]

---

[1] Because Comer will be under state supervision following service of his state sentence, the court terminated his federal supervision.

However, it now appears that the court's error in not recognizing that Comer's state sentence would not begin to run until after his federal sentence was completed has thwarted its intent. Because Comer was in primary federal custody, he was not receiving any credit towards his 6.5-year state sentence until his federal sentence was completed. The effect of this error is that in direct contravention of the court's intent, Comer's federal sentence is being run consecutive to, instead of concurrent to, his 6.5-year state sentence. Under these circumstances, Comer asks that the court correct the error by means of the compassionate release provision of the First Step Act.

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Comer's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons

4

that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

The compassionate release statute requires that a petitioner exhaust his administrative remedies prior to bringing a motion before the district court. See 18 U.S.C. § 3582(c)(1)(A). The exhaustion requirement may be waived under the following circumstances: (1) where it would be futile; (2) where the administrative process would not be capable of granting adequate relief; or (3) where pursuit of agency review would subject the petitioner to undue prejudice. United States v. Jackson, No. 5:02cr30020, 2020 WL 2735724 at *2 (W.D. Va. May 26, 2020). Comer readily acknowledges that he has not exhausted his administrative remedies but argues that the exhaustion requirement should be waived because he was not in federal custody when he filed his compassionate release petition. By the time Comer filed his compassionate release petition, he had already completed his federal sentence. At that time and at present, Comer was serving his 6.5-year state sentence. As such, Comer argues, there is no administrative remedy available to the Bureau of Prisons to adjust his sentence.

The government bats this argument back to Comer, contending that as Comer has fully completed his federal sentence and is not subject to any further federal supervised release, the court lacks jurisdiction to adjust his federal sentence. Certainly, that would be the case were Comer no longer incarcerated, but Comer remains in state custody. Importantly, because Comer's state sentence runs consecutive to his federal sentence, the onset date of his state sentence is dependent upon the end of his federal sentence. Under these circumstances, Comer's compassionate release petition is not moot and remains a justiciable claim. United

States v. Fluker, 891 F. 3d 541, 549-51 (4th Cir. 2018). As such, the court retains jurisdiction to address Comer's compassionate release petition.

The court must next consider whether there are any "extraordinary and compelling reasons" that would warrant "reduc[ing] the term of imprisonment" imposed in Comer's case. 18 U.S.C. § 3582(c)(1)(A). In United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020), the Fourth Circuit held that district courts may consider "any extraordinary and compelling reason for [compassionate] release that a defendant might raise." McCoy, 981 F.3d at 284 (citing United States v. Brooker, 976 F.3d 228, 239 (2d Cir. 2020)). In so finding, the court rejected the notion that district courts are constrained by the policy statement found in USSG § 1B1.13 and the application note that accompanies the policy statement. See discussion, McCoy, 981 F.3d at 280-84. The court commented that "the very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." Id. at 287 (citing United States v. Jones, 482 F.Supp.3d 969, 980-81 (N.D. Cal. 2020)).

Several district courts have used the compassionate release statute to reduce sentences in unusual circumstances where no other remedy is available. In United States v. Trenkler, 537 F.Supp.3d 91 (D. Mass. 2021), the court found extraordinary and compelling circumstances warranted reduction of a defendant's sentence where all parties recognized that the district court had erred in imposing a life sentence based on a preponderance of the evidence rather than on a finding by the jury as required by the applicable statute. Id. at 108. The district court had attempted to remedy the mistake by granting a writ of coram nobis, but the First Circuit

6

Court of Appeals reversed the district court after finding that the application for writ of coram nobis was in effect a veiled and untimely motion for relief under 28 U.S.C. § 2255. Id. at 96. Trenkler later brought the claim under the compassionate release statute and in granting the motion and reducing the life sentence, the district court commented that Congress "has given trial judges broad authority – indeed it has imposed a statutory duty, upon a defendant's motion – to conduct an individualized review of the defendant's case for extraordinary and compelling reasons that call out for correction." Id. at 106.

Similarly, in United States v. Lopez, 523 F.Supp.3d 432, 438 (S.D.N.Y 2021), the court granted compassionate release to correct a mistake at sentencing that resulted in a significant error in guidelines calculation with the defendant having no other avenue available to correct the error. Also, in United States v. Eccleston, 543 F.Supp.3d 1092 (D.N.M. 2021), the court granted compassionate release and reduced a sentence where the record reflected that the understanding at the federal sentencing was that the sentence imposed to run concurrent with a state sentence, but the sentences were run consecutive. The defendant had been unsuccessful in attempting to correct the error via collateral review proceedings and the court found that the case presented extraordinary and compelling circumstances. See also United States v. Fields, 554 F. Supp. 3d 324 (D.N.H. 2021) (granting compassionate release to a prisoner wrongly classified as a sex offender, resulting in physical abuse by other inmates, when inmate had tried for more than four years to correct the error and the BOP had ignored a court order to correct the error); and United States v. Cano, No. 95-00481-CR-ALTONAGA, 2020 WL 7415833, at *5-6 (S.D. Fla. Dec. 16, 2020) (granting compassionate release and reducing sentence based in part on defendant's claim that he was wrongfully sentenced as a principal in

7

a continuing criminal enterprise, even though the claim had been rejected on appeal and collateral review).

In this case, Comer argues that the court's decision to run his sentence of 14 months concurrent with his 6.5-year Augusta and Rockingham County sentences has been undermined by the fact that the state did not commence running Comer's sentence until 14 months following his federal arrest. The government counters that Virginia state sentences normally run consecutively and the fact that the Virginia Department of Corrections did not start the clock running on Comer's state sentences until after his federal sentence was completed—14 months after Comer's federal arrest—presents no extraordinary or compelling circumstances. Rather, the government argues, this is the normal functioning of separate sovereigns, relying on Setser v. United States, 566 U.S. 231 (2012).

Setser addressed the often confusing interplay of federal and state sentences. Monroe Setser was indicted in state court for possessing methamphetamine. At the same time, Setser was on state probation for another drug offense. A federal grand jury indicted Setser for possession with the intent to distribute methamphetamine, and he pleaded guilty. At his federal sentencing, the district court indicated that Setser's federal sentence run consecutive to his anticipated sentence on his state probation violation but concurrent to the anticipated sentence on his new state conviction. Setser appealed, and while his federal appeal was pending, the state court sentenced him to 5 years for the probation violation and 10 years for the new drug charge, to run concurrently.

Addressing the legality of Setser's federal sentence in light of the inconsistent state sentences, the Supreme Court held that the district court acted within its authority to address

8

whether to run an anticipated state sentence concurrently or consecutively. In so doing, the court addressed the issue of dual sovereignty, as follows:

> In our American system of dual sovereignty, each sovereign—whether the Federal Government or a State—is responsible for the administration of [its own] criminal justice syste[m]. If a prisoner like Setser starts in state custody, serves his state sentence, and then moves to federal custody, it will always be the Federal Government—whether the district court or the Bureau of Prisons—that decides whether he will receive credit for the time served in state custody. And if he serves his federal sentence first, the State will decide whether to give him credit against his state sentences without being bound by what the district court or Bureau said on the matter. Given this framework, it is always more respectful of the State's sovereignty for the district court to make its decision up front rather than for the Bureau of Prisons to make the decision <u>after</u> the state court has acted. That way, the state court has all of the information before it when it acts.

<u>Id.</u> at 241 (internal quotations and citations omitted).

Applying the dual sovereignty principles espoused in <u>Setser</u>, the government argues that because Comer started in federal custody, he was required to serve his federal sentence first. Under these circumstances, it is within the state's sovereign power to decide "whether to give him credit against his state sentences without being bound by what the district court . . . said on the matter." <u>Id.</u> But Comer does not argue that the state lacked authority to order that his state sentences run consecutively. Rather, he argues under the unique facts of this case that the state's decision not to start running his state time until after the 14-month federal sentence was completed is not what the district court intended in this case, authorizing the district court to correct the error by means of the compassionate release statute.

The court agrees with Comer. In sentencing Comer to 14 months to run concurrent with his 6.5-year state sentence, the district court did not intend that Comer serve an additional

9

14 months on top of the 6.5 years already imposed by the state. Rather, the court stated at sentencing that the 6.5 years imposed by the state was sufficient to meet the goals of punishment as regards deterrence and punishment for breaching a court's trust. It was important to the district court in this case that each of the three sentences arose out of the same conduct by Comer. Given that fact, the court concluded that 6.5 years was sufficient.

The government argues that the court is powerless at this point to revise Comer's sentence to effectuate its intent, contending this is the normal operation of dual sovereignty. The court disagrees. This case does not present the normal operation of dual sovereignty. Rather, Comer's 14-month sentence was imposed in error, an error based on the fact that the court was told at sentencing that Comer was getting state credit for the time he was serving. That error guided the court's decision in this case, and it would be inequitable to allow that error to be perpetuated. In short, the court finds that the sentencing error in this case presents extraordinary and compelling circumstances authorizing compassionate release.[2]

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). In a supervised release revocation case, the court is required to consider a subset of the § 3553(a) factors, as reflected in § 3583(e). Application of these factors requires

---

[2] Moreover, Comer cannot pursue his claim via Fed. R. Crim. P. 35 because more than fourteen days have passed since he was sentenced. Nor can he pursue relief via 28 U.S.C. §§ 2241 or 2255 because he no longer is in federal custody. The court finds that Comer's situation presents the type of situation contemplated by the Fourth Circuit when it commented in McCoy that "the very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." McCoy, 981 F.3d at 287.

the court to adjust Comer's sentence to achieve the result intended at the revocation hearing held on April 16, 2018. At that time, the court was focused on deterrence, breach of the court's trust, and making sure that Comer had available to him state rehabilitative programming. Protection of the public is likewise served by the 6.5 years Comer is serving in state prison. In order to achieve the sentence the court imposed on April 16, 2018, the court is required to adjust Comer's sentence to 1 month and 8 days, ending on January 16, 2017, the day before his state arrest on January 17, 2017. In that way, the court's sentence imposed on April 16, 2018, will be corrected to give effect to the court's intention that Comer serve a total of 6.5 years for the three sentences imposed by the state and federal courts arising out of the same 2016 offense conduct. Such a sentence is sufficient, but not greater than necessary, to reflect the nature and circumstances of the offense, Comer's history and characteristics, afford deterrence, protect the public, and provide drug treatment.

## IV.

For the above-stated reasons, the court will **GRANT** Comer's motion for compassionate release, ECF No. 309, and reduce his sentence to 1 month and 8 days, ending on January 16, 2017. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered: May 26, 2022

Digitally signed by Michael F. Urbanski
Chief U.S. District Judge
Date: 2022.05.26 18:19:47 -04'00'

Michael F. Urbanski
Chief United States District Judge